**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **BAYMIRRAH WOODS** | : | Civil Action No.: 3:25-CV-420-RGJ |
| 53 Double Court | : | |
| Vine Grove, KY 40175 | : | Judge: Rebecca Grady Jennings |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ENCOMPASS HEALTH** | : | |
| **REHABILITATION HOSPITAL OF** | : | |
| **LAKEVIEW, LLC** | : | |
| c/o Corporation Service Company | : | |
| 306 421 West Main Street | : | |
| Frankfort, KY, 40601 | : | |
| | : | |
| Defendant. | : | |

---

### COMPLAINT WITH JURY DEMAND

---

Baymirrah Woods (Ms. Woods or "Plaintiff") states the following for her Complaint against Encompass Health Rehabilitation Hospital of Lakeview, LLC ("Encompass" or "Defendant"):

### PARTIES

1.      Plaintiff Baymirrah Woods ("Ms. Woods" or "Plaintiff") is a resident of Vine Grove, Kentucky. Plaintiff's claims arose out of an employment relationship with Encompass Health Rehabilitation Hospital of Lakeview, LLC located in Elizabethtown, Kentucky.

2.      Encompass Health Rehabilitation Hospital of Lakeview, LLC ("Encompass" or "Defendant") is a Foreign Limited Liability Company registered with the Kentucky Secretary of State doing business in Hardin County, Kentucky.

1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Ms. Woods asserts claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnant Workers Fairness Act (PWFA).

4.      Ms. Woods also states claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

5.      Venue is proper in this Court because most of the transactions and occurrences and injuries occurred in Hardin County, Kentucky.

6.      Ms. Woods has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## BACKGROUND FACTS

7.      Ms. Woods is a Black female.

8.      Ms. Woods was employed by Defendant and, at all relevant times, performed her job duties satisfactorily.

9.      Ms. Woods' manager, Carli Tachniak, treated Ms. Woods differently than her similarly situated Caucasian coworkers throughout her employment.

10.     For example, Ms. Tachniak attempted to write Ms. Woods up for wearing headphones at work, even though her Caucasian coworkers routinely wore headphones without facing any repercussions.

11.    Ms. Woods' manager falsely accused Ms. Woods of failing to clock out for lunch, while Ms. Woods' Caucasian coworkers were not similarly accused.

12.    Ms. Woods' manager would follow Ms. Woods around the workplace, monitoring her more closely than her Caucasian coworkers.

13.    Ms. Woods' manager also increased Ms. Woods' workload without increasing the workload of Ms. Woods' Caucasian coworkers.

14.    Ms. Woods requested that she not be scheduled to work with this manager due to the discriminatory treatment, but Defendant continued to schedule Ms. Woods to work with her.

15.    In March 2024, Ms. Woods informed Defendant that she was pregnant.

16.    On or around April 9, 2024, Ms. Woods reached out to Human Resources to set up a meeting to complain about racial discrimination and pregnancy discrimination. Defendant never provided Ms. Woods with a time to meet regarding her complaints.

17.    Ms. Woods made multiple informal complaints of racial and pregnancy discrimination to Defendant during the course of her employment.

18.    Despite Ms. Woods' complaints, the discriminatory treatment by her manager continued throughout April 2024.

19.    During this time, Ms. Woods heard a coworker state, "I don't know why she says she's pregnant, she doesn't look like she's pregnant," referring to Ms. Woods' pregnancy.

20.    On or around April 28, 2024, Ms. Woods requested pregnancy accommodations, including additional bathroom breaks and extended meal periods, to accommodate her pregnancy.

21.    These requested accommodations were reasonable and would not have imposed an undue hardship on Defendant.

22.     During this request, Ms. Woods also complained again about racial discrimination and pregnancy discrimination.

23.     On May 1, 2024, Defendant terminated Ms. Woods' employment.

24.     Defendant refused to engage in the interactive process with Ms. Woods to identify and implement reasonable accommodations for her pregnancy.

25.     Defendant terminated Ms. Woods just days after she complained of racial and pregnancy discrimination and requested workplace accommodations related to her pregnancy.

26.     Defendant's reason for terminating Ms. Wood's is bogus.

27.     Ms. Woods suffered damages and will continue to suffer damages in the future because of Defendants' actions.

## CLAIMS

### COUNT I
### RACIAL DISCRIMINATION UNDER
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28.     Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

29.     Ms. Woods is an African American female.

30.     Ms. Woods was at all times qualified for her position with Defendant.

31.     Defendant's conduct created a hostile work environment based on Ms. Woods' race.

32.     In fact, Ms. Woods' manager, Carli Tachniak, would constantly monitor, reprimand, and treat Ms. Woods negatively, while treating Ms. Woods' similarly situated Caucasian coworkers more favorably.

33.    For example, Ms. Woods' manager attempted to write her up for wearing headphones, even though her Caucasian coworkers wore headphones without facing discipline.

34.    Ms. Woods' manager falsely accused Ms. Woods of not clocking out for lunch, while her Caucasian coworkers were not similarly accused.

35.    Ms. Woods' manager would follow Ms. Woods around the workplace while not similarly monitoring Caucasian coworkers.

36.    Ms. Woods' manager increased Ms. Woods' workload while not increasing the workload of her Caucasian coworkers.

37.    Ms. Woods requested not to be scheduled to work with this manager due to the discriminatory treatment, but Defendant continued to schedule her to work with the manager.

38.    Defendant's actions and the actions of Ms. Woods' manager would be intimidating, hostile, or offensive to a reasonable person.

39.    Ms. Woods was required to endure Defendant's racially discriminatory treatment as a term and condition of her employment.

40.    Ms. Woods made multiple complaints regarding the racial discrimination, but Defendant took no prompt or effective remedial action to prevent the ongoing racially discriminatory conduct.

41.    Ms. Woods suffered emotional distress due to the severe and pervasive hostile work environment she endured while employed by Defendant.

42.    Defendant's actions were severe and pervasive.

43.    Defendant's actions were willful and taken in conscious disregard for the rights of Ms. Woods.

44.     As a direct and proximate result of Defendant's discrimination, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

45.     Ms. Woods is entitled to all damages and injunctive relief permissible under Title VII.

46.     As a result of Defendant's actions, Ms. Woods has been harmed.

## COUNT II
## RACIAL DISCRIMINATION UNDER KRS §344

47.     Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

48.     Ms. Woods is an African American female.

49.     Ms. Woods was at all times qualified for her position with Defendant.

50.     Defendant's conduct created a hostile work environment based on Ms. Woods' race.

51.     In fact, Ms. Woods' manager, Carli Tachniak, would constantly monitor, reprimand, and treat Ms. Woods negatively, while treating Ms. Woods' similarly situated Caucasian coworkers more favorably.

52.     For example, Ms. Woods' manager attempted to write her up for wearing headphones, even though her Caucasian coworkers wore headphones without facing discipline.

53.     Ms. Woods' manager falsely accused Ms. Woods of not clocking out for lunch, while her Caucasian coworkers were not similarly accused.

54.     Ms. Woods' manager would follow Ms. Woods around the workplace while not similarly monitoring Caucasian coworkers.

55.     Ms. Woods' manager increased Ms. Woods' workload while not increasing the workload of her Caucasian coworkers.

56.     Ms. Woods requested not to be scheduled to work with this manager due to the discriminatory treatment, but Defendant continued to schedule her to work with the manager.

57.     Defendant's actions and the actions of Ms. Woods' manager would be intimidating, hostile, or offensive to a reasonable person.

58.     Ms. Woods was required to endure Defendant's racially discriminatory treatment as a term and condition of her employment.

59.     Ms. Woods made multiple complaints regarding the racial discrimination, but Defendant took no prompt or effective remedial action to prevent the ongoing racially discriminatory conduct.

60.     Ms. Woods suffered emotional distress due to the severe and pervasive hostile work environment she endured while employed by Defendant.

61.     Defendant's actions were severe and pervasive.

62.     Defendant's actions were willful and taken in conscious disregard for the rights of Ms. Woods.

63.     As a direct and proximate result of Defendant's discrimination, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

64.     Ms. Woods is entitled to all damages and injunctive relief permissible under KRS §344.

65.     As a result of Defendant's actions, Ms. Woods has been harmed.

## COUNT III
### RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 BASED ON RACIAL DISCRIMINATION COMPLAINTS

66.     Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

67.     Ms. Woods made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful discriminatory employment practices based on race.

68.     Ms. Woods reported Defendant's unlawful behavior to her supervisor and to Defendant's Human Resources department.

69.     Ms. Woods' belief that Defendant's behavior constituted racial discrimination was reasonable and made in good faith.

70.     As a result of Ms. Woods' complaints, Defendant's agents and employees took materially adverse actions against her, including increased monitoring, increased workload, and false accusations regarding her conduct.

71.     Defendant's adverse actions also constituted retaliatory workplace harassment against Ms. Woods.

72.     Within days of Ms. Woods complaining about racial discrimination, Defendant terminated Ms. Woods' employment.

73.     Ms. Woods was humiliated, economically damaged, and suffered emotional distress as a result of Defendant's retaliatory conduct.

74.     Defendant's actions were willful and taken in conscious disregard of Ms. Woods' rights.

75.     As a direct and proximate result of Defendant's retaliation, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

76.     Ms. Woods is entitled to all damages and injunctive relief permissible under Title VII.

77.     As a result of Defendant's actions, Ms. Woods has been harmed.

## COUNT IV
### RETALIATION UNDER KRS §344 BASED ON RACIAL DISCRIMINATION COMPLAINTS

78.    Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

79.    Ms. Woods made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful discriminatory employment practices based on race.

80.    Ms. Woods reported Defendant's unlawful behavior to her supervisor and to Defendant's Human Resources department.

81.    Ms. Woods' belief that Defendant's behavior constituted racial discrimination was reasonable and made in good faith.

82.    As a result of Ms. Woods' complaints, Defendant's agents and employees took materially adverse actions against her, including increased monitoring, increased workload, and false accusations regarding her conduct.

83.    Defendant's adverse actions also constituted retaliatory workplace harassment against Ms. Woods.

84.    Within days of Ms. Woods complaining about racial discrimination, Defendant terminated Ms. Woods' employment.

85.    Ms. Woods was humiliated, economically damaged, and suffered emotional distress as a result of Defendant's retaliatory conduct.

86.    Defendant's actions were willful and taken in conscious disregard of Ms. Woods' rights.

87.    As a direct and proximate result of Defendant's retaliation, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

88.    Ms. Woods is entitled to all damages and injunctive relief permissible under KRS §344.

89.    As a result of Defendant's actions, Ms. Woods has been harmed.

**COUNT V**
**DISCRIMINATION UNDER THE PREGNANT**
**WORKERS FAIRNESS ACT**

90.    Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

91.    At all relevant times, Ms. Woods was an employee within the meaning of the Pregnant Workers Fairness Act ("PWFA"), and Defendant was an employer within the meaning of the PWFA.

92.    Ms. Woods informed Defendant in March 2024 that she was pregnant.

93.    On or around April 28, 2024, Ms. Woods requested reasonable accommodations for her pregnancy, including additional bathroom breaks and extended meal periods.

94.    Ms. Woods' requests for accommodations were reasonable and would not have imposed an undue hardship on Defendant.

95.    Defendant failed to engage in the interactive process with Ms. Woods to identify and provide reasonable accommodations for her pregnancy-related needs.

96.    Defendant failed to provide Ms. Woods with the requested reasonable accommodations for her pregnancy.

97.    Instead of providing accommodations, Defendant terminated Ms. Woods' employment on May 1, 2024, shortly after her request for pregnancy-related accommodations.

98.    Defendant's actions in failing to accommodate Ms. Woods and terminating her employment constitute discrimination under the Pregnant Workers Fairness Act.

99. As a direct and proximate result of Defendant's conduct, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

100. Ms. Woods is entitled to all damages and injunctive relief permissible under the Pregnant Workers Fairness Act.

101. As a result of Defendant's actions, Ms. Woods has been harmed.

**COUNT VI**
**PREGNANCY DISCRIMINATION UNDER TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964**

102. Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

103. Ms. Woods is a female employee who informed Defendant of her pregnancy in March 2024.

104. Ms. Woods was qualified for her position at all relevant times.

105. Defendant unlawfully discriminated against Ms. Woods on the basis of her pregnancy.

106. During her employment, Ms. Woods was subjected to comments that disparaged and questioned her pregnancy, including an incident when a coworker stated, "I don't know why she says she's pregnant, she doesn't look like she's pregnant."

107. On or around April 28, 2024, Ms. Woods requested reasonable accommodations related to her pregnancy, including additional bathroom breaks and extended meal periods.

108. Defendant terminated Ms. Woods' employment on May 1, 2024, shortly after her request for pregnancy accommodations.

109. Defendant's actions constituted discrimination on the basis of pregnancy in violation of Title VII.

110.    As a direct and proximate result of Defendant's pregnancy discrimination, Ms. Woods has suffered and will continue to suffer economic and emotional damages.

111.    Defendant's actions were willful and in conscious disregard of Ms. Woods' rights.

112.    Ms. Woods is entitled to all damages and injunctive relief available under Title VII.

113.    As a result of Defendant's unlawful conduct, Ms. Woods has been harmed.

<u>COUNT VII</u>
**RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
BASED ON PREGNANCY DISCRIMINATION COMPLAINTS**

114.    Ms. Woods restates and incorporates all preceding paragraphs as if fully set forth herein.

115.    On or about April 9, 2024, Ms. Woods reached out to Human Resources to complain about pregnancy discrimination and requested a meeting to address these concerns, but Defendant failed to provide a meeting time.

116.    On or about April 28, 2024, Ms. Woods again complained about pregnancy discrimination and requested reasonable accommodations, including additional bathroom breaks and extended meal periods.

117.    Ms. Woods' complaints about pregnancy discrimination were made in good faith and constituted protected activity under Title VII.

118.    Following Ms. Woods' complaints, Defendant subjected her to materially adverse actions, including continued discriminatory treatment, denial of accommodations, increased hostility at work, and termination.

119.    On or about May 1, 2024, shortly after Ms. Woods' complaints, Defendant terminated her employment.

120.    Defendant's adverse actions were causally connected to Ms. Woods' protected complaints and constitute unlawful retaliation in violation of Title VII.

121.    Ms. Woods suffered humiliation, economic harm, and emotional distress as a result of Defendant's retaliatory conduct.

122.    Defendant acted willfully and with conscious disregard of Ms. Woods' rights.

123.    As a direct and proximate result of Defendant's retaliation, Ms. Woods has sustained, and will continue to sustain, economic and emotional injuries.

124.    Ms. Woods is entitled to all damages and injunctive relief available under Title VII.

125.    As a result of Defendant's unlawful retaliation, Ms. Woods has been harmed.

**WHEREFORE**, Ms. Woods respectfully requests that this Court find for her and award her the following:

      a.   Compensatory damages.

      b.   Reinstatement;

      c.   Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

      d.   Statutory damages;

      e.   Interest;

      f.   Punitive damages;

      g.   Attorney fees;

      h.   Costs;

      i.   Litigation expenses; and

      j.   All other relief this Court deems proper.

Respectfully Submitted,

*/s/ L. Corban Polk*
Robert L. Thompson (KY: 98791)
L. Corban Polk (KY: 101112)
THOMPSON LEGAL LLC
1230 S. Hurstbourne Pkwy, Suite 210
Louisville, KY 40222
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com
Corban@RthompsonLegal.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ L. Corban Polk*
L. Corban Polk